SEYFARTH SHAW LLP
Eric E. Hill (SBN 173247)
ehill@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549

SEYFARTH SHAW LLP
Jinouth D. Vasquez Santos (SBN 299056)
jvasquezsantos@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219

Attorneys for Defendants
LMS INTELLIBOUND, LLC and
CAPSTONE LOGISTICS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SLADE, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LMS INTELLIBOUND, LLC; CAPSTONE LOGISTICS, LLC; CAPSTONE LOGISTICS, LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**DEFENDANTS LMS INTELLIBOUND, LLC AND CAPSTONE LOGISTICS, LLC'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[Alameda Superior Court Case, No., RG17879244]<br><br>*[Filed concurrently with Civil Case Cover Sheet; Certification of Interested Persons or Entities; Corporate Disclosure Statement; Declaration of Barry Boyles; Declaration of Tom Peot; Declaration of Eric Hill]*<br><br>Original Complaint Filed:  October 18, 2017<br>FAC Filed: December 1, 2017 |

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

43554194v.5

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants LMS Intellibound, LLC ("LMS") and Capstone Logistics Services, LLC ("Capstone") (collectively "Defendants"), hereby file this Notice of Removal pursuant to 28 U.S.C. §§ 1441(a), 1446, and 1453, asserting original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), as well as supplemental jurisdiction under 28 U.S.C. § 1367.

**I.   PROCEEDINGS IN STATE COURT**

On October 18, 2017, Plaintiff Joseph Slade ("Plaintiff") filed a Complaint (the "Complaint") on behalf of himself and others similarly situated in the Superior Court of California for the County of Alameda, entitled *Joseph Slade v. Intellibound Logistics, LLC and Capstone Logistics, LLC,* Case No. RG17879244. On December 1, 2017, Plaintiff filed a first amended complaint (the "Amended Complaint" or "FAC"), in which he amended the parties to the action and added claims under PAGA. The Amended Complaint is entitled, *Joseph Slade v. LMS Intellibound, LLC and Capstone Logistics, LLC.* In the Amended Complaint, Plaintiff alleges four causes of action: (1) "Unfair Business Practices - Cal Bus: & Prof. Code §§ 17200, et seq."; (2) "Waiting Time Penalties"; (3) "Labor Code §§ 201-203 - Labor Code Private Attorneys General Act of 2004"; and (4) "Labor Code § 212 - Labor Code Private Attorneys General Act of 2004."

Plaintiff served Defendants' registered agent by substituted service. On December 4, 2017, Plaintiff left a copy of the Amended Summons, Amended Complaint, Complaint, and Civil Case Cover Sheet at 1325 J Street, Suite 1550, Sacramento, CA. On December 8, 2017, Plaintiff mailed copies of these same documents to Defendant's registered agent at the same address. True and correct copies of the Proofs of Service of Summons and Proofs of Service by Mail are attached as **Exhibit 1**. True and correct copies of the Amended Summons, Amended Complaint, Complaint, and Civil Case Cover Sheet are attached hereto as **Exhibit 2**.

On January 3, 2018, Defendants filed their Answer to Plaintiff's unverified Amended Complaint in the Superior Court of the State of California, County of Alameda. A true and correct copy of the Answer filed is attached as **Exhibit 3**.

2

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

43554194v.5

Defendants have not filed or received any other pleadings or papers, other than the pleadings described as Exhibits 2 and 3, in this action prior to this Notice of Removal.

## II.   TIMELINESS OF REMOVAL

The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law."). Formal service of process, measured from the service date under state law, is a prerequisite for triggering the 30-day removal period. Thus, the 30-day period does not begin to run until the Defendant has been properly served under state law. *Murphy Bros., Inc*, 526 U.S. at 347-48, 350-51; *see Rosset v. Hunter Eng'g Co.*, No. C 14-01701 LB, 2014 WL 3569332, at *5 (N.D. Cal. July 17, 2014) ("[T]he 30-day period for filing a notice of removal begins to run only after formal service is made."); *Madren v. Belden, Inc.*, No. 12-CV-01706-RMW, 2012 WL 2572040, at *2-3 (N.D. Cal. July 2, 2012) ("Formal service of process . . . is a prerequisite for triggering the 30-day removal period.").

This Notice of Removal is timely because it is filed within thirty (30) days of formal service of the Amended Summons and Amended Complaint by substituted service under California Code of Civil Procedure § 415.20(a). 28 U.S.C. § 1446(b)(1). Under California Code of Civil Procedure § 415.20(a), substituted service can be made by "leaving a copy of the summons and complaint during usual office hours" and "thereafter mailing a copy of the summons and complaint by first class mail." Service of a summons in this manner "is deemed complete on the 10th day after the mailing." Cal. Code Civ. P. § 415.20(a).

Here, Plaintiff served Defendant's registered agent for service of process by substituted service by leaving a copy of the Amended Summons and Amended Complaint on December 4, 2017, and by thereafter mailing on December 8, 2017, a copy of the Amended Summons and Amended Complaint to the registered agent at the place where a copy of the Amended Summons and Amended Complaint was left, pursuant to California Code of Civil Procedure § 415.20(a). (*See* **Exhibit 1,** Proofs of Service of Summons ¶ 5(b) ("I served the party by substituted service") and Proofs of Service by Mail ¶ 2 ("On 12/08/2017, after substituted service under section CCP 415.20(a) or 415.20(b) . . . was made . . . I mailed copies."); *see also* Exhibit A to Declaration of Eric Hill filed in support of Notice of Removal.) Thus, service was not completed under § 415.20(a) until December 18, 2017, which triggered Defendants' 30-day time limit to remove. This Notice of Removal is timely because it is filed within thirty (30) days of December 18, 2017.

## III.   CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is properly removable, pursuant to 28 U.S.C. § 1441(a), in that this Court has original jurisdiction over the action, because (1) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, (2) neither of the Defendants is a state, state official, or other governmental entity, (3) the number of putative class members is greater than 100, and (4) the action is a class action in which at least one class member is a citizen of a state different from that of a defendant. 28 U.S.C. §§ 1332(d)(2), (d)(5) & (d)(6).

### A.   Plaintiffs and Defendants are Minimally Diverse

CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A). In the instant case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Defendant Capstone, which is a citizen of Delaware with its principal place of business in Georgia.

#### 1.   Plaintiff is a Citizen of California

For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state

citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("[T]he place of residence is prima facie the domicile.").

Here, Plaintiff alleges that he resides in the State of California. (Exh. 2, FAC ¶ 2 ("at all relevant times hereto Plaintiff was a California resident who worked in California for Defendants...").) During the course of his employment with Defendants, Plaintiff worked in Lathrop, California from approximately August 8, 2017 to September 1, 2017. (Exh. 2, FAC ¶ 4 ("Plaintiff Joseph Slade worked for Defendants from approximately August 16, 2017 to September 1, 2017 as a sanitation worker at Defendants warehouse located in Lathrop, California."); *see also* Declaration of Tom Peot ("Peot Decl.") ¶ 5.) Based on Defendants' records, throughout the period of his employment with Defendants, Plaintiff was a resident of California. (Peot Decl. ¶ 5.) Accordingly, based on the above, Plaintiff was, when this action commenced, and still is, a citizen of California. Plaintiff also seeks to represent allegedly similarly situated employees who worked for Defendants in the State of California. (Exh. 2, FAC ¶¶ 10-11, 17-18.)

### 2. Defendant Capstone is not a Citizen of California

Plaintiff named Capstone Logistics, LLC as a defendant. The traditional rule is that an unincorporated association, such as a limited liability company, has the citizenships of all of its members. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction . . . an LLC is a citizen of every state of which its owners/members are citizens.").

However, for purposes of CAFA's minimal diversity requirement, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332 (d)(10); *Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010). In *Hertz*, the Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates . . . with a corporation's headquarters." *Id.* The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 1192-93; *see id.* at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

At all times since Plaintiff commenced this lawsuit, Capstone was and is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Georgia. (Declaration of Barry Boyles ("Boyles Decl.") ¶¶ 4, 8-9.) Capstone has maintained its corporate headquarters in Peachtree Corners, Georgia. Its corporate executives, including its senior leadership team, have been and continue to be located in Georgia, have maintained and continue to maintain their offices in Georgia, and have performed and continue to perform their primary duties and job functions in Georgia. (Boyles Decl. ¶¶ 8-9.) Because Capstone was formed under the laws of the State of Delaware, and maintains its principal place of business in the State of Georgia, it is not a citizen of the State of California.

Because Capstone is a limited liability company, even if the Court looks to Capstone's sole member, it is not a citizen of the State of California. At the time Plaintiff filed his lawsuit on October 18, 2017, Capstone consisted of one member: Capstone Logistics Acquisition, Inc. (Boyles Decl. ¶ 4.) Capstone Logistics Acquisition, Inc. is a Delaware corporation organized under the laws of the State of Delaware. (Boyles Decl. ¶ 5.) At all times since Plaintiff commenced this lawsuit, Capstone Logistics Acquisition, Inc. has maintained its principal place of business in Peachtree Corners, Georgia. Its

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

43554194v.5

corporate executives, including its senior leadership team, have been and continue to be located in Georgia, have maintained and continue to maintain their offices in Georgia, and have performed and continue to perform their primary corporate duties and job functions in Georgia. (Boyles Decl. ¶¶ 6-7.)

Accordingly, CAFA's diversity requirement is satisfied since at least one class member, Plaintiff, and at least one named and served defendant, Capstone Logistics, LLC, are citizens of different states.

### B. Doe Defendants' Citizenship May be Disregarded

The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."). Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002). Thus, the existence of Doe defendants one through ten, does not deprive this Court of jurisdiction.

## IV. DEFENDANTS ARE NOT GOVERNMENTAL ENTITIES

Neither of the Defendants is a state, state official, or any other governmental entity.

## V. THERE ARE MORE THAN 100 POTENTIAL CLASS MEMBERS

CAFA requires that the aggregated number of members of all putative classes in the complaint must be at least 100. 28 U.S.C. § 1332(d)(5)(B). Here, Plaintiff alleges that there are more than 200 putative class members. (Exh. 2, FAC ¶ 23 ("[P]laintiff is informed and believes that defendants have employed over 200 workers or more in the relevant time period.").) Also, from October 16, 2014, to the present, there have been approximately 4,981 non-exempt employee terminations or resignations at Defendants' facilities in California. (*See* Peot Decl. ¶ 6.) Thus, there are at least 4,981 putative class members in the alleged Class I (the waiting time penalty putative class), and the 100-putative class member requirement is easily satisfied.

## VI. THE AMOUNT IN CONTROVERSY EXCEEDS THE STATUTORY MINIMUM

### A. Defendants Only Have To Show By A Preponderance Of The Evidence That The Amount In Controversy Exceeds The Statutory Minimum

CAFA requires that the amount in controversy exceed $5,000,000 exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Serv.'s LLC*, 728 F.3d 975, 982 (9th Cir. 2013).

While Defendants deny any liability, the amount in controversy as alleged in Plaintiff's Amended Complaint exceeds $5,000,000. All calculations supporting the amount in controversy are based on the Amended Complaint's allegations (along with other information as identified herein), assuming the truth of those allegations without any admission.

Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

Defendants must only make a plausible claim that the amount in controversy exceeds the jurisdictional minimum. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

Because Plaintiff has not alleged his particular damages, reasonable estimates of the alleged

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

43554194v.5

amount in controversy are appropriate. *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate. *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. 2017) (distinguishing *Ibarra*); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

In determining the amount in controversy, the Court must consider the recovery sought, including penalties, as well as recoverable statutory attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (finding that claims for statutory attorneys' fees should be included in amount in controversy, regardless of whether award is discretionary or mandatory). The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy."). The amount in controversy is determined at the time of removal and is to be decided based on the allegations in the operative pleading. *Medrano v. Genco Supply Chain Solutions*, 2011 WL 92016, at *11 (E.D. Cal. 2011) (holding that, for purposes of removal, a court "must deal with what has actually been pled").

**B.     The Amount In Controversy Exceeds $5,000,000**

    **1.     Claim for Waiting Time Penalties in Second Cause of Action.**

In the Amended Complaint, Plaintiff seeks relief on behalf of "a class of similarly situated former employees who worked for Defendants within the State of California at any time" from October 18, 2014 to the present ("Class I"). (Exh. 2, FAC ¶ 17.) Plaintiff worked for Defendants as a warehouse associate at Defendants' warehouse located in Lathrop, California from approximately August 8, 2017, to September 1, 2017. (Peot Decl. ¶ 5.)

Plaintiff's second cause of alleges a failure to pay all wages due to discharged and quitting employees upon the cessation of their employment with Defendants. Plaintiff alleges that:

> Defendants unfairly and unlawfully have had a policy and practice of failing to pay Plaintiff and proposed Class I members all wages earned in their employment when due as required by Labor Code §§ 201 and 202. (Exh. 2, FAC ¶ 48.)
>
> Plaintiff and members of proposed Class I who ceased employment with Defendants are entitled to unpaid compensation but thus far have not received that compensation. (FAC ¶ 49.)
>
> More than 30 days have passed since Plaintiff and certain members of proposed Class I left Defendants' employ. (Exh. 2, FAC ¶ 50.)
>
> As a consequence of Defendants' willful failure to compensate Plaintiff and members of proposed Class I timely for all hours worked, Plaintiff and proposed subclass members whose employment ended at any time the during the applicable limitations period preceding the original filing of this Complaint and up through the present and until compliance with the law, *are entitled to 30 days' wages* under Labor Code § 203, together with interest. (Exh. 2, FAC ¶ 51.) (emphasis added.)

The statute of limitations for claims under California Labor Code section 203 is three years. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010). Since October 18, 2014 (three years before the Original Complaint was filed), there have been approximately 4,981 non-exempt employee terminations or resignations at Defendants' facilities in California. (Peot Decl. ¶ 6.) Plaintiff specifically alleges that he and every employee whose employment ended during the relevant period is now entitled to 30 days' wages as waiting time penalties under Labor Code § 203. (Exh. 2, FAC ¶¶ 49-51.) The average hourly straight time rate for Defendants' California employees is $13.26, and a standard scheduled shift for these employees is 8 hours. (Peot Decl. ¶ 8.) Thus, the amount in controversy for Plaintiff's waiting time penalties claim can be calculated by multiplying the average daily rate of pay for these employees *times* 30 days' waiting time, *times* the number of terminations/resignations, or approximately **$15,851,534**. [$13.26/hour x 8 hours x 30 days x 4,981 terminated/resigned employees].

### 2. Claims for PAGA Penalties in Third Cause of Action.

In his third cause of action, Plaintiff seeks penalties as prescribed by the California Labor Code Private Attorney General Act of 2004 ("PAGA") (Labor Code § 2698, et seq.). Plaintiff alleges that Defendants failed to pay all wages owed upon discharge or resignation in violation of California Labor

10

Code §§ 201-203, and therefore that Defendants are liable for civil penalties under PAGA as a result of these violations. (Exh. 2, FAC ¶¶ 54-59; prayer for relief no. 4, p. 12 of FAC).

PAGA pays a bounty of twenty-five percent (25%) of total penalties to the aggrieved employee(s), while diverting 75% to the state Labor and Workforce Development Agency ("LWDA"), Lab. Code § 2699(i). There is a split of authority in the Ninth Circuit regarding whether the LWDA recovery-sharing is relevant to the amount in controversy. *Compare Schiller v. David's Bridal, Inc.*, 2010 U.S. Dist. LEXIS 81128 (E.D. Cal. July 14, 2010) ("[Q]uestion is not how much Plaintiff or the class will ultimately recover; the amount in controversy is calculated based upon the amount put into controversy by the complaint, regardless of how the recovery is divided. Thus, it makes little difference whether the LWDA shares in the recovery – Plaintiff, by alleging PAGA penalties, has put 100% of the PAGA penalties in controversy."); *with Walker v Corepower Yoga LLC*, 2013 WL 2338675 (S.D. Cal. May 28, 2013) (In the absence of the Ninth Circuit precedent on the issue, the Court held that only 25 percent of the total potential PAGA recovery may be included in calculating the amount in controversy on the PAGA claims).

The statute of limitations for PAGA claims is one year. Cal. Civ. Proc. Code § 340(a); *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007) (holding that PAGA statute of limitations is one year). Here, the limitations period for the PAGA claims would be from October 18, 2016 (one year before the Original Complaint was filed) to the present.

PAGA provides for penalties of $100 for an initial violation in a pay period and $200 per pay period for each later violation. See Cal. Labor Code § 2699(f)(2).

During that statutory period (October 18, 2016, to the present), there have been approximately 1,925 non-exempt employee terminations or resignations at Defendants' facilities in California. (Peot Decl. ¶ 7.) Plaintiff alleges in his third cause of action that a PAGA violation occurred every time an employee was paid his/her final paycheck upon the cessation of employment, because the employee allegedly was not paid all wages due as required under Labor Code § 203. Thus, the amount in controversy on this PAGA claim would be **$192,500** ($100 for the initial violation x 1,925 employee termination/resignations between October 18, 2016 and the present), or **$48,125** if only the 25% employee share of the PAGA penalties is considered.

### 3. Attorneys' Fees and Costs Further Establish that the Amount In Controversy Exceeds the Required Minimum

Plaintiff also claims that he is entitled to attorneys' fees and costs. (Exh. 2, FAC ¶¶ 45, 59, 66; and prayer for relief at 12). Requests for attorneys' fees may be taken into account in ascertaining the amount in controversy for purposes of removal. *Longmire v. HMS Host U.S., Inc.*, Case No., 2012 WL 5928485, at * 9 (S.D. Cal. 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over amount in controversy under CAFA.") (citing *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. 2007) (attorneys' fees appropriately included in determining amount in controversy).

In the class action context, courts have found that 25% of the aggregate amount in controversy is a benchmark for attorneys' fees awards under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (holding that attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (affirming award of attorneys' fees where the district court approved a fee award in an amount greater than the 'benchmark' of 25%); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *27-29 (N.D. Cal. 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6-8 (C.D. Cal. 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25% of the common fund).

Thus, even under the conservative benchmark of 25% of the total recovery, attorneys' fees based on the amount in controversy established above using conservative estimates is $4,011,088 [$16,044,034 (AIC above) x .25].

In sum, the amount in controversy includes:

| | | |
|---|---|---|
| $ 15,851,534 | Waiting Time Penalties Claim | |
| $ 192,500 | PAGA Claim[1] | |
| $ 16,044,034 | Subtotal | |
| $ 4,011,008 | Attorney's Fees | |
| **$ 20,055,042** | **Total** | |

While Defendants expressly deny that Plaintiff is entitled to any relief in this action and believe that the allegations are meritless, the amount in controversy is dictated by Plaintiff's claims in the Amended Complaint, rather than the merits. Here, the amount in controversy, based on Plaintiff's own allegations in the Amended Complaint, far exceeds $5,000,000.

## VII. SUPPLEMENTAL JURISDICTION OVER THE PAGA AND UCL CLAIMS

This Court has supplemental jurisdiction over Plaintiff's asserted representative action for civil penalties under PAGA and the UCL. (Exh. 2, FAC ¶¶ 39, 58, 60 (Plaintiff's first cause of action involves Defendants alleged unlawful pay practices; the third cause of action for PAGA penalties seeks "penalties provided by Labor Code §§201-203"; the fourth cause of action for PAGA penalties incorporates the facts previously alleged and seeks payment for alleged unlawful pay practices under Labor Code § 212).) Indeed, Plaintiff's action asserted in the first, third, and fourth causes of action forms the same case or controversy because it is based on the same "nucleus of operative facts." *See Kohler v. Inter Tel Techs.*, 244 F.3d 1167, 1170 (9th Cir. 2001) (finding supplemental jurisdiction proper because claims stemmed from same factual circumstances); *Carey v. S.J. Louis Construction*, 2010 WL 3853348, at *4-5 (E.D. Cal. 2010) (denying motion to remand because one plaintiff demonstrated the required amount in controversy and the others alleged the same Labor Code violations such that their allegations were part of the same case or controversy). Thus, the Court has proper jurisdiction over this case pursuant to 28 U.S.C. §1367.

## VIII. VENUE

Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(a), 1441(a), and 1446(a). As discussed above, Plaintiff is a resident of California.

---

[1] Even if only 25% of the PAGA penalties are considered, the amount in controversy still exceeds $19,500,000.

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

43554194v.5

Moreover, this action originally was brought in the Superior Court of the State of California, County of Alameda, which is located within the Northern District of California. Therefore, it is properly removed to this district.

## IX. NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and his counsel, and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Alameda.

## X. PRAYER FOR REMOVAL

WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

DATED: January 5, 2018

Respectfully submitted,

SEYFARTH SHAW LLP

By: _____
Eric E. Hill
Jinouth D. Vasquez Santos
Attorneys for Defendants
LMS INTELLIBOUND, LLC and
CAPSTONE LOGISTICS, LLC